**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-278-DLB**

**HECTOR CHAVEZ NOLASCO** **PETITIONER**

**v.** **MEMORANDUM OPINION AND ORDER**

**JASON MAYDAK, et al.** **RESPONDENTS**

* * * * * * * * * * * * * * * *

## I. INTRODUCTION

This matter is before the Court on Petitioner Hector Chavez Nolasco's Petition for Writ of Habeas Corpus (Doc. # 1). Respondents[1] having filed their Responses[2] (Docs. # 3 and 4) and Petitioner having filed his Reply (Doc. # 5), the matter is now ripe for the Court's review. For the following reasons, the Court will **deny** the Petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Guatemala who entered the United States on or about July 7, 2018. (Doc. # 5-1). Petitioner entered the United States by crossing the Rio Grande River, but was not apprehended until days later when he and other noncitizens whom he had crossed the border with were apprehended by U.S. Border

---

[1] Petitioner files this action against Samuel Olson, Chicago Field Office Director, U.S. Immigration and Customs Enforcement ("ICE"); David J. Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"); Todd Blanche, Acting Attorney General of the United States (collectively, the "Federal Respondents"); and Jason Maydak, Jailer, Boone County Jail. (Doc. # 1 at 1).

[2] Respondent Maydak filed a separate response, arguing that he is not a proper respondent. (Doc. # 6 at 2).

Patrol Agents in Sarita, Texas. (*Id.*). On July 14, 2018, Petitioner was issued a Notice and Order of Expedited Removal. (Doc. # 5-2). However, Petitioner must have expressed a fear of returning to his home country, because on August 24, 2018, he underwent a credible fear screening. (Doc. # 5-3). At the screening, the asylum officer concluded that Petitioner had established a credible fear of returning to Guatemala. (*Id.* at 2).

On August 27, 2018, Petitioner was issued a Notice to Appear, which was "issued after an asylum officer ha[d] found that the [Petitioner] ha[d] demonstrated a credible fear or persecution of torture." (Doc. # 5-4 at 1). On February 29, 2024, an Immigration Judge ("IJ") denied Petitioner's application for asylum and ordered him removed to Guatemala. (Doc. # 1 ¶ 4). Petitioner appealed this decision with the Board of Immigration Appeals, which remains pending. (*Id.* ¶ 5). Petitioner states that after this he was "released [] for eight years" however, neither party elaborated on what grounds Petitioner was released. (*See* Doc. # 7 at 2). Petitioner does admit, however, that he was not paroled. (Doc. # 1 ¶ 13).

On January 24, 2026, Petitioner was issued an I-200 Warrant for Arrest of Alien (Doc. # 5-5) and was taken into ICE custody. (Doc. # 5 at 3). Petitioner has remained detained at the Boone County Jail since then. (*Id.*). On March 24, 2026, IJ Ryan Thompson denied Petitioner's custody redetermination request, concluding that the immigration court lacked jurisdiction. (Doc. # 1-1).

On June 26, 2026, Nolasco filed the instant Petition for Writ of Habeas Corpus (Doc. # 1). On July 6, 2026 the Court issued an order directing Respondents to respond

to the Petition. (Doc. # 4). Respondents having filed their Responses (Docs. # 5 and 6), and Petitioner having filed his Reply (Doc. # 7), the matter is ripe for the Court's review.

## III. ANALYSIS

Nolasco's Petition alleges that his present detention without access to a bond hearing deprives him of his right to due process under the Fifth Amendment and he is therefore entitled to immediate release, or in the alternative, a bond hearing. (Doc. # 1 at 10). Respondents argue that "Petitioner is detained under 8 U.S.C. § 1225(b)(1) [and] [t]herefore, this case is not covered by the Sixth Circuit's recent decision in *Lopez Campos v. Raycraft*[.]"[3] (Doc. # 5 at 1).

### A. Proper Respondents

Before turning to Petitioner's substantive argument, the Court will address Respondent Maydak's contention that he is not a suitable respondent. (Doc. # 6 at 2). "[T]he federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner.'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). The Supreme Court has held that "[w]henever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. Similarly, this Court has held that, where an immigration detainee files a petition for writ of habeas corpus, the jailer is a proper respondent. *M.T.B. v. Byers*, No. 2:24-cv-082-DCR, 2024 WL 3881843, at *1 (E.D. Ky. Aug. 20, 2024). Indeed, "as the person who has 'day-to-day control over the facility in which [Nolasco] is being detained,' Maydak is [Nolasco's] custodian." *Id.* (quoting *Roman*

---

3 175 F.4th 713 (6th Cir. 2026).

*v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2003)). Petitioner is presently detained at the Boone County Jail. (Doc. # 1 ¶ 1; Doc. # 6 at 1). Maydak, as the elected Jailer, "oversee[s] and operate[s]" the Boone County Jail. (*Id.*). Therefore, Maydak is a proper respondent to Nolasco's Petition. *See Padilla*, 542 U.S. at 447; *Byers*, 2024 WL 3881843, at *1. Accordingly, the Court will deny Maydak's request to dismiss him as a respondent. Having concluded that Maydak is a proper respondent, the Court turns to the substantive arguments Petitioner raises in his Petition.

**B. Petitioner is mandatorily detained pursuant to § 1225(b)(1)(B)(ii)**

Petitioner argues that he is not subject to mandatory detention under § 1225(b)(1), but rather "is subject to detention, if at all, pursuant to 8 U.S.C. § 1226." (Doc. # 1 ¶ 11, 14). Respondents argue Petitioner is detained pursuant to § 1225(b)(1). Specifically, Respondents argue that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) because he was placed into expedited removal proceedings and then found by an asylum officer to have a credible fear of persecution. (Doc. # 5 at 3). In his Reply, Petitioner argues that not only is Respondents' position "not the basis for the immigration judge's decision" but that mandatory detention under § 1225(b)(1) "does not apply to removal proceedings before an immigration judge." (Doc. # 7 at 2).

***1. Relevant framework***

To implement its immigration policy, the Government "must be able to decide" who may enter the country. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Id.* 8 U.S.C. § 1225 provides a roadmap for that process.

When an alien presents themselves at the border of the United States, they are deemed an applicant for admission[4] and must be inspected by an immigration officer. § 1225(a)(1), (3). Inspection by an immigration officer lasts only "a few seconds" and requires the officer to "examine documents, run basic lookout queries, and ask pertinent questions to determine admissibility and issue relevant entry documents." Library of Congress, *Expedited Removal of Aliens: Legal Framework*, Inspection (October 8, 2019) https://www.congress.gov/crs-product/R45314#ifn84 (last visited June 23, 2026) (internal quotations omitted). If that immigration officer finds discrepancies in the alien's application or travel documents, the alien is referred to a secondary inspection for further determination on whether the alien is admissible. *Id*. An alien may be deemed inadmissible due to "fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287. If the alien is deemed inadmissible, the immigration officer will order the alien removed and placed into expedited removal proceedings. § 1225(b)(1)(A)(i); *see also* United States Department of Homeland Security, *I-860 Notice and Order of Expedited Removal*: *Determination of Inadmissibility*, Sample, https://www.ice.gov/doclib/detention/checkin/ER_I_860.pdf (last visited June 23, 2026).

However, if the alien indicates a fear of persecution or intent to apply for asylum, the immigration officer will refer the alien to an interview by an asylum officer. § 1225(b)(1)(A)(ii). This is often called a credible fear interview or credible fear screening. *See* U.S. Citizenship and Immigration Services ("USCIS"), *Questions and Answers: Credible Fear Screening*, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (last accessed June 23,

4 Pursuant to § 1225(a)(1), an applicant for admission is defined as "an alien present in the United States who has not been admitted or who arrives in the United States[.]"

2026). If that immigration officer determines that the alien has a credible fear of persecution, then the alien is detained and transferred from expedited to full removal proceedings for further consideration of his asylum claim. § 1225(b)(1)(B)(ii). Detention during this time is mandatory pending "further consideration of the application for asylum." *Id*.

***2. Application to Nolasco's case***

Compare the above to the present case. Here, Petitioner entered the United States on July 7, 2018, where, a few days later he then encountered a border patrol officer. (Doc. # 5-1 at 2). Based on the record, Petitioner entered the United States by crossing the border through Mexico, rather than through an official port of entry. (*See id*.) (noting that Petitioner "entered the United States on or about July 7, 2018 at or about 10:00 p.m. at an unknown location, using a raft across the Rio Grande River."). Nevertheless, after encountering the border patrol officer, Petitioner must have been processed and deemed inadmissible because he was issued an I-860 Notice and Order of Expedited Removal. (Doc. # 5-2). The Notice indicates that Petitioner was deemed inadmissible due to his lack of valid entry documents. (*Id*.). Accordingly, Petitioner was placed into expedited removal proceedings. (*Id*.). However, Petitioner must have indicated to the immigration officer that he intended to apply for asylum or had a fear of persecution because he attended a credible fear screening on August 24, 2018 where the officer found that Petitioner had "established that there is a significant possibility that he would be tortured (killed) if he returned to Guatemala." (Doc. # 5-3 at 2). Petitioner states that following his screening, he has "continuously resided in the United States" but

does not explain on what grounds he was granted release from custody during this time. (Doc. # 1 ¶ 3).

On August 27, 2018, Petitioner was served a Notice to Appear, which was issued "after an asylum officer ha[d] found that the [Petitioner] ha[d] demonstrated a credible fear of persecution or torture." (Doc. # 5-4); *see also* USCIS, *Questions and Answers: Credible Fear Screening* https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-credible-fear-screening (last accessed June 23, 2026) (if an asylum officer finds that an alien has a credible fear, they may either "retain and consider [the] application and also consider [the alien's] eligibility for withholding of removal" or, they may "[i]ssue a Notice to Appear before an IJ for consideration of [the alien's] asylum, withholding of removal, and CAT protection claims."). Over four years later, on February 29, 2024, Petitioner then appeared before an IJ who "denied his applications for relief and ordered him removed to Guatemala." (Doc. # 1 ¶ 4). Petitioner continued to live freely in the United States until he was arrested on January 24, 2026. (Doc. # 5-5).

Under § 1225(b)(1)(B)(ii), unless paroled, "[i]f the [immigration] officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." *See also Matter of M-S*, 27 I&N at 510 ("[U]nless paroled, an alien must be detained until his asylum claim is adjudicated."). Numerous courts, including the Supreme Court in *Jennings*, have concluded that the plain reading of the phrase "shall be detained" in § 1225(b)(1)(B)(ii) requires mandatory detention of the noncitizen until their application for asylum has been fully adjudicated. *See Jennings*, 583 U.S. at 599 ("The plain meaning of [§

1225(b)(1)(B)(ii)] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum"); *Pambukhchyan v. United States Immig. & Customs Enf't*, No. 26-0136, 2026 WL 980250, at *3 (W.D. La. Mar. 23, 2026) ("Plainly, Section 1225 does not authorize release on bond. . . . The language 'shall be detained' is clear."); *Paredes Padilla v. Galovich*, No. 25-cv-865-jdp, 2025 WL 3640960, at *3 (W.D. Wis. Dec. 16, 2025) (noting that *Jennings* "holds that once a non-citizen is transferred from expedited to full removal proceedings for consideration of an asylum claim, § 1225(b)(1)(B)(ii) mandates detention for the duration of the asylum proceedings."); *Brito-Goncalvez*, 2026 WL 1077448, at *3 ("And under [§ 1225(b)(1)(B)(ii)], the government has the authority to, indeed is required to, detain [the petitioner.]"); *see also Matter of M-S*, 27 I&N at 515 (aliens transferred from expedited to full proceedings after establishing credible fear "remain ineligible for bond[.]").

Petitioner was transferred from expedited to full proceedings so that his asylum claim could be adjudicated. This occurred after the asylum officer determined that Petitioner had a credible fear on November 6, 2025. The conclusion that Petitioner was transferred to full proceedings is reinforced by the NTA that was issued on February 9, 2026. (Doc. # 1-2). As indicated by Petitioner's Automated Case Information, his asylum case is still pending. Accordingly, Petitioner's asylum claim "is now being considered in the context of the 'full removal proceedings' that the government has initiated against him." *Brito-Goncalvez v. Field Office Director*, No. 1:26-cv-94, 2026 WL 1077448, at *3 (S.D. Oh. Apr. 21, 2026) (quoting *Matter of M-S*, 27 I&N Dec. 509, 515 (A.G. 2019)). Thus, unless paroled, Petitioner "shall be detained" until his asylum claim is adjudicated.

§ 1225(b)(1)(B)(ii).[5] Petitioner himself concedes that he has not been paroled, and therefore he is properly detained pursuant to § 1225(b)(1)(B)(ii).

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS SO ORDERED** as follows:

(1) Nolasco's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED**;

(2) This matter is hereby **DISMISSED** and **STRICKEN** from the Court's active docket.

This 14th day of August, 2026.

**Signed By:**

***David L. Bunning*** DB

**Chief United States District Judge**

[5] Petitioner argues that pursuant to *Singh v. Hott,* No. 4:26-cv-256-DJH, 2026 WL 1880217 (W.D. Ky. June 30, 2026) mandatory detention under § 1225(b)(1)(B)(ii) does not apply to removal proceedings before an immigration judge. The Court acknowledges that the court in *Singh* concluded that a "'further proceedings' of an asylum application does not always involve removal proceedings before an immigration judge." 2026 WL 1880217, at *4. Specifically, the court concluded that because the noncitizen "was placed in removal proceedings before an immigration judge . . . . an officer had finished considering the asylum application." *Id*. The Court disagrees. § 1225(b)(1)(B)(ii) specifically states that a noncitizen shall be detained for further consideration of an application for an asylum "[i]f the [immigration] officer determines at the time of the interview that an alien has a credible fear of persecution." The Court understands this to mean that if an immigration officer determines that a noncitizen has a credible fear, the noncitizen must be detained following that consideration. Thus, the Court concludes that an immigration officer's decision does not conclude a noncitizen's asylum application.